UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

MARK SWEENEY,

    Plaintiff,

v.                                      Case No. _____

DENVER COMMUNITY
FEDERAL CREDIT UNION,

    Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff Mark Sweeney brings this action against Defendant Denver Community Federal Credit Union and alleges:

**Introduction**

    1.    This is an action for actual, statutory and punitive damages, costs, and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA).

    2.    In September of 2019, Plaintiff paid his automobile lease in full. The creditor for the lease was Defendant Denver Community Federal Credit Union ("Denver Credit"). Despite Plaintiff's on-time payment of the full balance, Denver Credit began reporting the account as delinquent, with an outstanding balance of more than $17,000. Plaintiff disputed the inaccurate reporting repeatedly, yet, despite the loan servicer (PIVOT Servicing Group) agreeing with him that there was no balance owed, Denver Credit continued to report the inaccurate account balance to credit reporting agencies. As a result, Plaintiff was denied credit for a new vehicle.

3. Plaintiff brings claims for actual and punitive damages against Defendant for its inaccurate reporting, and for its failure to investigate Plaintiff's disputes of that inaccurate reporting.

### Jurisdiction, Venue, and Parties

4. This Court has original jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5. Defendant Denver Community Federal Credit Union ("Denver Credit") was formed in Colorado, and conducts business through its principal office, located at 1075 Acoma Street, Denver, Colorado 80204.

6. Personal jurisdiction exists over Defendant as it has its principal office and regularly conducts business in the State of Colorado.

7. Venue is appropriate in the United States District Court for the District of Colorado, pursuant to 28 U.S.C. § 1391, as Defendant regularly conducts business in and is a resident of the State of Colorado.

8. Plaintiff is a natural person residing in Walton County, Florida.

9. Plaintiff is, and was, at all relevant times a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

### General Allegations

10. On August 6, 2016, Plaintiff opened an automobile lease account (a loan) with Denver Credit. The loan was serviced by PIVOT Servicing Group.

11. Plaintiff made all of his payments on time and, in September 2019, paid off the lease in full.

12. In March of 2020, Plaintiff and his wife decided that they should invest in a new, larger RV or "camper", as Plaintiff is required to travel throughout the United States for work.

13. In April of 2020, Plaintiff visited RV Connection in Panama City, Florida, to try to finance a camper, but he was denied credit because his credit score was too low.

14. A few weeks later Plaintiff attempted to obtain a new RV from LazyDays, another RV dealer in Tampa.

15. On May 13, 2020, LazyDays sent Plaintiff a Notice of Adverse Action stating Plaintiff as denied credit as a result of his credit score. According to the notice, Plaintiff's Trans Union credit score at the time was 654.

16. The Finance Manager at LazyDays of Tampa, Todd Glenn, suggested that Plaintiff pay off a few bills in order to get his credit approved for the financing of the camper.

17. Plaintiff paid off a few bills and attempted to finance again, with no success.

18. The Finance Manager then suggested that Plaintiff specifically pay off the auto lease account with Denver Credit to increase his credit score. However, Plaintiff had already paid off the lease account on September 13, 2019, the day he returned the car.

19. All payments for the account were paid on time during the duration of the lease.

20. On or around May 3, 2020, Plaintiff viewed his Trans Union credit report.

21. He saw that the Denver Credit auto lease account was incorrectly reporting as an adverse account with late payments and an outstanding balance of $17,684.

22. In May 2020, Plaintiff disputed the Denver Credit account through Trans Union's website.

23. On May 14, 2020, Plaintiff's wife spoke to the company that serviced the Denver Credit Loan, PIVOT Servicing Group.

24. Specifically, Plaintiff's wife spoke to a Loan Servicing Specialist at PIVOT Servicing Group, Stephanie Tagtmeyer, who told Plaintiff's wife that PIVOT had already contacted Trans Union to change the inaccurate information.

25. On June 2, 2020, Plaintiff retrieved the results of his online dispute from Trans Union's Dispute Center website. With respect to the Denver Credit account, the results stated: "INVESTIGATION RESULTS – VERIFIED AS ACCURATE: The disputed item was verified as accurate."

26. That same day, June 2, 2020, Plaintiff's wife sent an email tothe Collection Manager of Denver Community Federal, Jill Montgomery, with the dispute results from Trans Union.

27. Plaintiff's wife emailed Jill Montgomery a letter dated May 12, 2020, from the Loan Servicing Specialist of PIVOT Servicing Group, Stephanie Tagtmeyer, which stated that lease account 1175830816 in the name of Mark Sweeney should not have reported to the Credit Bureaus as delinquent. The letter further stated that "Mark Sweeney made all payments on time and lease was paid in full on 9/13/2019," and it confirmed that "the Credit Bureau has been updated."

28. On June 30, 2020, Plaintiff obtained his updated Trans Union credit report and saw that the auto lease account through Denver Credit was still inaccurately reporting as 30 days past due with a balance of more than $17,000.

4

29. On June 30, 2020, the same day plaintiff pulled his Trans Union credit report, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (CFPB).

30. Plaintiff filed the complaint with the CFPB as a result of Denver Credit's continued reporting of false information to the credit bureaus.

31. This false information Denver Credit reported to the credit bureaus damaged Plaintiff's credit and prevented Plaintiff from obtaining financing for a new RV (or "camper"), and possibly endangering his livelihood.

32. On July 8, 2020, Trans Union sent Plaintiff additional Dispute Results. Again, Trans Union verified the Denver Credit account. The Dispute Results said: DENVER COMMUNITY FCU #117583****: "INVESTIGATION RESULTS – VERIFIED AS ACCURATE: The disputed item was verified as accurate."

33. For a second time, Denver Credit had incorrectly verified the disputed account as accurate.

34. As a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress.

35. All necessary conditions precedent to the filing of this action have occurred.

## COUNT I
**(Violations of FCRA § 1681s-2(b) as to Denver Community Federal Credit Union)**

36. Plaintiff re-alleges and incorporates paragraphs 1 through 35, including all subparts, as if fully set forth herein.

37. Denver Credit is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher of information" as codified at 15 U.S.C. § 1681s-2.

38. Denver Credit published false information regarding Plaintiff's alleged debt obligation and the Denver Credit account to consumer reporting agencies (CRAs), and through those CRAs to all of Plaintiff's potential lenders.

39. On one or more occasions within the past two years, by example only and without limitation, Denver Credit violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies along with Plaintiff's disputes.

40. When Plaintiff submitted his disputes the CRAs used a dispute system named "e-OSCAR" which has been adopted by the CRAs and by their furnisher-customers such as Denver Credit. e-OSCAR is an automated system that uses procedures that are systemic and uniform.

41. When a CRA receives a consumer dispute, it (usually via an offshore, outsourced vendor) translates that dispute into an Automated Credit Dispute Verification or "ACDV" form.

42. The ACDV form is the method by which Denver Credit has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

43. Based on the manner in which Trans Union responded to Plaintiff's disputes, representing that Denver Credit had verified the supposed accuracy of its reporting, Plaintiff alleges that Trans Union did in fact forward Plaintiff's disputes via ACDVs to Denver Credit.

44. Denver Credit understood the nature of the Plaintiff's disputes when it received the ACDVs from Trans Union.

45. Denver Credit violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of Denver Credit's representations; by failing to review all relevant information regarding Plaintiff's dispute of Denver Credit's representations; by failing to correctly report the results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Denver Credit's representations to the consumer reporting agencies.

46. Denver Credit violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Trans Union after Denver Credit had been notified of the dispute and that the information was inaccurate.

47. As a result of Denver Credit's conduct, action and inaction, Plaintiff suffered damage by loss of time due to Plaintiff's attempts to correct the inaccurate information; stress; and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

48. Denver Credit's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Denver Credit was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Denver Community Federal Credit Union, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

*s/ Joshua R. Kersey*
Joshua R. Kersey
Florida Bar No. 87578
Texas Bar No. 24090206
MORGAN & MORGAN, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 225-6734
Facsimile:  (813) 222-2490
JKersey@ForThePeople.com
TDowdy@ForThePeople.com
*Attorney for Plaintiff*